## Fox *v.* State.

No. 41425          January 25, 1960          117 So. 2d .340

*T. N. Gore, Sr.,* Marks, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

Lee, J.

John Fox was indicted for the murder of Dave Connely. The jury found him guilty of manslaughter and the court sentenced him to serve a term of eight years

in the state penitentiary. From that judgment he appealed.

On Saturday, June 21, 1958, Charlie Phipps and Dave Connely went together in Phipps' car to the town of Marks. The night John Fox, who lived in the same rural community, asked Phipps for permission to ride home with him. When Phipps and Connely started home about 11:30 that night, they picked up Fox at the designated place. Phipps was driving, with Fox in the middle and Connely on the outside.

According to Phipps, Fox accused Connely of stealing a cow and that he owed him some money. Connely denied the charge. The witness told them to "stop that nonsense." All at once, Fox hit Connely, who immediately told Fox that "he had cut him—cut him to death." The witness stopped the car and pulled Fox out of the car behind him, and Connely fell out upon the ground, bleeding from a knife wound, and died in a few minutes. The witness said that Connely had no weapon of any kind and denied that he called Fox a bad name or that he threatened to kill him that night.

Several witnesses, who went immediately to the scene, saw Connely as he was dying and testified that there was no weapon of any kind on or about his body. Sheriff L. V. Harrison saw the two fresh holes in the upper part of the chest where the knife struck. The next morning Fox surrendered, gave him the knife, and said that he struck Connely twice.

Fox, testifying for himself, said that he was 82 years old; that Connely was 19 years of age and was big and robust; that sometime after they started home, Connely said "he didn't want to hear another g-d-d-m word I got to say; that he was going to kill me tonight;" that Connely took hold of him; that he was scared and thought he was going to lose his life; that he reached in his pocket, got his knife, and opened it as he brought it out; and that he hit two licks with it.

Several witnesses testified that the general reputation of the defendant for peace or violence in the community in which he lived was good.

The only error assigned and argued is that the evidence fails to sustain the charge of manslaughter, as defined in the State's instruction.

No motion for a new trial was made.

According to the evidence for the State, the defendant and the deceased were fussing about a cow and a debt, but the deceased made no threats and had no weapon of any kind, and the defendant all at once struck the deceased. This version was directly contradicted by the defendant, who said that the deceased, who was young and robust, threatened to kill him that night, took hold of him, and that he struck the two licks because he feared for his life. The sole question was whether or not Fox acted in self defense.

By one instruction, given for the defendant, the jury was told that if they believed from the evidence that "the defendant had reasonable grounds to apprehend danger of losing his life or of receiving great bodily harm at the hands of the deceased at the time of the fatal encounter then it is the sworn duty of the jury to find the defendant not guilty."

Again they were instructed that if they believed from the evidence that "there is a probability that the defendant took the life of the deceased under apparent danger to himself of suffering serious bodily harm at the hands of the deceased, then there is a reasonable doubt of his guilt of murder, and the jury should find him not guilty."

To the jury was presented a simple issue of fact, namely, which of these two versions was true. Clearly, the State's theory was not unreasonable or incredible and was impeached in no way except by the version of the defendant himself.

From which it follows that the cause must be, and is, affirmed.

Affirmed.

*McGehee, C. J.,* and *Kyle, Holmes* and *Arrington, JJ.,* concur.